## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHIRLEY L. PHELPS-ROPER, | ) | CASE NO. 4:09CV3268 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | & ORDER |
| DAVE HEINEMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Joint Stipulation of Consent Decree (Filing No. 79) entered into by Plaintiff Shirley L. Phelps-Roper and Defendants City of Bellevue, John W. Stacey, Gary Mixan, Kay Dammast, and Gary Troutman (collectively the "Bellevue Defendants"); Objections to the Proposed Consent Decree (Filing Nos. 84, 85, 86, 87, 88); Motions to Dismiss and Abstain or to Stay Proceedings and for a Protective Order (Filing Nos. 42, 47, 51, 52, 56, 72); and the Motion to Dismiss filed by Defendants Steven M. Curry and Anthony McPhillips (Filing No. 68). For the reasons discussed below, the Court declines to enter the consent decree and the objections will be sustained. The motions to abstain will be granted in part and denied in part, and the Defendants Curry and McPhillps's Motion to Dismiss will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Shirley L. Phelps-Roper ("Phelps-Roper") is a member of the Westboro Baptist Church ("WBC") and regularly protests at funerals, including the funerals of United States soldiers. (Filing No. 17, Amended Complaint, ¶ 1.) The Defendants in this action are city, county, and state government officials and officers, mainly in eastern Nebraska. (*Id*. ¶¶ 2-22.) Phelps-Roper and members of her family picketed a soldier's funeral in Bellevue, Nebraska, on June 5, 2007. (*Id*. ¶ 49.) During the protest, Bellevue police

officers arrested Phelps-Roper for contributing to the delinquency of a minor after she allowed her son to step on an American flag.  (*Id.* ¶ 63.)  On July 5, 2007, criminal complaints were filed in Sarpy County Court (the "county court") charging Phelps-Roper with one count each of mutilating a flag, disturbing the peace, contributing to the delinquency of a minor, and negligent child abuse.  (*Id.* ¶ 67.)

On February 3, 2009, Phelps-Roper filed a motion to quash with the county court, seeking relief from prosecution.  (*Id.* ¶ 68.)  Phelps-Roper argued that Nebraska's flag mutilation statute, Neb. Rev. Stat. § 28-928 (Reissue 2008), was unconstitutional.  (*Id.*)  The county court declined to rule on Phelps-Roper's constitutional challenges because of its limited jurisdiction. (*Id.*) Phelps-Roper appealed the county court's decision and moved to bypass review by the state district court and court of appeals and to appeal directly to the Nebraska Supreme Court.  (*Id.*)  The Nebraska Supreme Court granted the bypass but dismissed the appeal for lack of jurisdiction.  (*Id.*)  Phelps-Roper's appeal is currently pending before the Nebraska Supreme Court on a motion for rehearing and the matter has not yet returned to the county court.  (*Id.*)

Phelps-Roper filed this case on December 30, 2009 (Filing No. 1).  She amended her complaint on January 20, 2010, to add Defendant Gary Troutman and new allegations. (Filing No. 17, Amended Complaint.) In the Amended Complaint, Phelps-Roper asserts five general causes of action: (1)  Counts I and II challenge the constitutionality of the Nebraska Funeral Picketing Law ("NFPL"),[1]  facially and as applied to Phelps-Roper.  (*Id.*

---

[1]  Neb. Rev. Stat. §§ 28-1320.01 - 28-1320.03 (Reissue 2008).

2

¶¶ 79-94.) (2) Counts III and IV challenge the Nebraska Flag Mutilation Statute,[2] facially and as applied. (*Id*. ¶¶ 95-110.) (3) Count V alleges Phelps-Roper's pending criminal actions were brought in violation of the United States Constitution, and that the statutes under which she is charged are unconstitutional as applied to her. (*Id*. ¶¶ 111-22.) (4) Counts VI and VII challenge the City of Bellevue's parade/assembly permit ordinances facially and as applied. (*Id*. ¶¶ 123-40.) (5) Count VIII alleges Phelps-Roper's arrest and prosecution violate her substantive due process rights to religious demonstration and to raise her children in accordance with her religious beliefs. (*Id*. ¶¶ 142-143.)

With the original Complaint, Phelps-Roper filed a Motion for Preliminary Injunction with respect to the criminal proceedings and the enforcement of the statutes and ordinances she challenges. (Filing No. 5.) A hearing on the Motion for Preliminary Injunction was set for February 25, 2010. (Filing No. 41.) On February 23, 2010, the Court granted Defendants Heineman, Bruning, Hutton, and Nebraska Supreme Court's Motion to Continue the hearing on the preliminary injunction until this Court resolved the Defendants' Motions to Abstain and Dismiss. (Filing No. 70.) On March 1, 2010, this Court granted the joint motion of Phelps-Roper and Defendants City of Bellevue, Kay Dammast, Gary Mixan, John W. Stacey, and Gary Troutman to reserve ruling on the motions to dismiss and abstain until Phelps-Roper and the Bellevue Defendants could submit a joint stipulation to enter a consent decree. (Filing No. 76.) On March 10, 2010, Phelps-Roper and the Bellevue Defendants filed the Joint Stipulation to Enter a Consent Decree and

---

[2] Neb. Rev. Stat. § 28-928 (Reissue 2008).

submitted a Proposed Consent Decree.  (Filing No. 79.)  Several other Defendants have

objected to the Proposed Consent Decree (*See* Filing Nos. 84, 85, 86, 87, 88.)

The Proposed Consent Decree purports to settle the claims between Phelps-Roper

and the Bellevue Defendants.  Regarding the NFPL, the Proposed Consent Decree states:

> The Bellevue defendants and each of them agree, and it is ordered,
> that the Bellevue defendants and their agents, employees, successors,
> or assigns, will not issue citations, make arrests, or file or further
> prosecute or pursue criminal charges against the plaintiff for violations
> of Neb. Rev. Stat. §§ 28-130.01, 28-1320.02 and 28-1320.03gives [sic]
> the statute an authoritative construction, in which case Bellevue
> defendants will enforce that more narrowly-construed statute.

(Filing No. 79-1, Proposed Consent Decree, ¶ 2.)

Regarding the Nebraska Flag Mutilation Statute, the proposed consent decree

states:

> The Bellevue defendants and each of them agree, and it is ordered,
> that the Bellevue defendants and their agents, employees, successors,
> or assigns, will not issue citations, make arrests, or file or further
> prosecute or pursue criminal charges against the plaintiff for violations
> of Neb. Rev. Stat. §28-928.

(*Id*. ¶ 3.)

The Proposed Consent Decree also notes that Phelps-Roper was being prosecuted

under the flag mutilation statute, contributing to the delinquency of a minor, and negligent

child abuse.  Regarding these charges in criminal actions pending against her, the

Proposed Consent Decree states:

> 5.  The Bellevue defendants agree, and it is ordered, that none of the
> Bellevue defendants, or any of their agents, employees, successors, or
> assigns, including any police officer of the Bellevue Police Department,
> will in their capacity as an employee or official for the City assist in the
> prosecution of the criminal cases pending in Sarpy County Court

against the Plaintiff, unless subpoenaed, in which case s/he shall in his/her official capacity not give any evidence or testimony inconsistent with this Consent Decree. The parties agree and understand that individuals cannot be restricted from personally appearing at the criminal proceedings.

6.  The Bellevue defendants agree, and the Court finds, that the arrest of plaintiff on June 5, 2007, under the flag mutilation statute, and/or the contributing to the delinquency of a minor statute (the two statutes listed on the citation), was not a valid arrest, and was contrary to the First Amendment of the United States Constitution and the Nebraska State Constitution, because plaintiff and her minor son . . . were engaged in non-disruptive lawful peaceful picketing and use of the American flag for expressive activities; no breach of the peace occurred; none of plaintiff's children including Jonah were in any danger or exposed to danger or acting delinquently, and were instead themselves engaged in protected activity; and the application of those two statutes to that activity was unconstitutional.

7.   The Bellevue defendants agree, and the Court finds, that the criminal citations issued against the Plaintiff and the preconditions placed upon the Plaintiff prior to engaging in protected expressive activity were an attempt to unconstitutionally restrict Plaintiff's expressive rights under the First Amendment of the United States Constitution and the Nebraska State Constitution. Further, the Bellevue defendants agree that the Nebraska Funeral Picketing statute was unconstitutionally applied to restrict Plaintiff's expressive activities in the City of Bellevue.

(*Id.* ¶¶ 5-7.)

The Proposed Consent Decree also forbids the City of Bellevue or its employees, agents, or assigns from arresting Phelps-Roper for disturbing the peace, contributing to the delinquency of a minor, or negligent child abuse for conduct associated with her picketing activities.  (*Id.* ¶ 9.)  The Proposed Consent Decree concludes by obligating the parties to attempt to reach an amicable agreement before involving the Court in an action to enforce the obligations.  (*Id.* ¶10.)  Last, the parties agree to dismiss Phelps-Roper's claims against

5

the Bellevue Defendants at the Bellevue Defendants' cost, and ask the Court to retain jurisdiction for the purpose of enforcing the terms of the Proposed Consent Decree. (*Id.* ¶ 11-12.)

## STANDARDS OF REVIEW

### 1.    Entry of Consent Decree

Entry of a consent decree is a judicial act and is left to the district court judge's informed discretion. *Missouri v. Independent Petrochemical Corp.,* 104 F.3d 159, 162 (8th Cir. 1997). The district court reviews a proposed consent decree for fairness, reasonableness and adequacy. *United States v. Hercules, Inc.*, 961 F.2d 796, 800 (8th Cir. 1992). A district court must also determine whether the proposed decree is consistent with the goals of the underlying legislation. *United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir. 1997).

### 2.    Motions to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Specifically, the complaint must contain "enough fact to raise a reasonable expectation that

discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id*. at 556.

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id*. (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

### 1.    Joint Submission of Consent Decree

The Court will not adopt the Proposed Consent Decree because its terms are inconsistent with statutory rights and duties. Though the law favors settlement, a district

7

court "is not a mere 'recorder of contracts from whom parties can purchase injunctions.'" *Hesselbein v. Clinton*, 999 F.2d 320, 324 (8th Cir. 1993) (quoting *Firefighters v. Cleveland*, 478 U.S. 501, 530 (1986)).  Rather, a consent decree is a judicial act, and "the adopting court is free to reject agreed-upon terms as not in furtherance of statutory objectives." *Id.* (quoting *United States v. Swift & Co.*, 286 U.S. 106, 115 (1932)).  A district court "may not enter a consent decree that imposes obligations on a party that did not consent to the decree." *Firefighters*, 478 U.S. at 530.  Further, parties may not consent to do something together that they lack the power to do individually. *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995); *see also Dunn v. Carey*, 808 F.2d 555, 560 (7th Cir. 1986) ("Some rules of law are designed to limit the authority of public officeholders.").  Absent a finding that a court action is necessary to remedy a federal constitutional violation, "parties can only agree to that which they have the power to do outside of litigation." *Perkins*, 47 F.3d at 216.

In the present case, Phelps-Roper and the Bellevue Defendants lack the power to consent to the terms of the decree.  First, the Bellevue Defendants may not abrogate duties in the manner provided in the Proposed Consent Decree.  In Nebraska, police chiefs and officers have a "duty to arrest all offenders against the laws of the state or the city." Neb. Rev. Stat. § 16-323 (Reissue (2007).  The proposed consent decree states, *inter alia*, that Bellevue Defendants will not arrest or issue citations against Phelps-Roper for violations of the NFPL[3] and the Nebraska flag mutilation statute.  The parties also agree

---

[3]  The Proposed Consent Decree states that the City of Bellevue will enforce the NFPL if the Court gives it an authoritative construction.  However, the Court has not yet interpreted the NFPL and the Bellevue Defendants may not abrogate their duty to enforce the law in the intervening time.

that the Bellevue Defendants will not arrest or issue citations to Phelps-Roper for disturbing the peace, contributing to the delinquency of a minor, or negligent child abuse in connection with her protest activities. Though police officers have considerable discretion in issuing citations or making arrests, the duty to enforce valid state law is statutorily imposed. Thus, the Court cannot place its judicial force behind a decree that expressly purports to abrogate this duty.

The Proposed Consent Decree also affects the rights and duties of parties who did not consent to its terms. The Proposed Consent Decree states that the criminal citations and preconditions placed on Phelps-Roper were unconstitutional. At this early stage of the litigation, it is not apparent that a court order is necessary to rectify a violation of the federal constitution. *See Perkins*, 47 F.3d at 216. A decree that the underlying arrest was unconstitutional would be a complete defense, backed by judicial force, to Phelps-Roper's criminal action pending in the county court. Thus, the terms would affect the rights and duties of the county attorney who prosecutes the crime, and the State of Nebraska which delegates enforcement of its laws to county and municipal authorities. Absent the affected parties' consent or a supported finding that the statutes and enforcement methods used by the Bellevue Defendants were unconstitutional, court approval is improper.

Last, the Proposed Consent Decree's language forbidding testimony unduly interferes with state court processes and would be overly burdensome to enforce. The enforcement mechanism of a consent decree makes it a judicial act. *Hesselbein*, 999 F.2d at 325. Further, a consent decree must use the least restrictive means and be narrowly drawn to address a particular problem. *Hines v. Anderson*, 547 F.3d 915, 922 (8th Cir. 2008). The Proposed Consent Decree bars the Bellevue Defendants or their agents or

9

assigns from assisting in the prosecution of Phelps-Roper's criminal actions pending in the county court unless subpoenaed.  If subpoenaed, the Bellevue Defendants, their agents, employees, or assigns may not give any evidence or testimony inconsistent with the Proposed Consent Decree.[4]

This provision presents at least two problems.  First, the stated guideline that testimony and evidence "be consistent with the Proposed Consent Decree" is overly broad.  Blanket injunctions are disfavored.  *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 n.1 (8th Cir. 2004).  A consent decree that requires future testimony to be consistent with the decree's terms lacks the same specificity.  Nearly every statement a witness makes would need to be reviewed to ensure consistency with the broad spectrum of the Proposed Consent Decree.  This process makes enforcement overly burdensome and intrusive.  Second, this term places judicial restriction on the content of a witness's testimony.  While the Bellevue Defendants are free to adopt an "official position" regarding their future conduct, the Court will not enter a decree that expressly limits a witness's testimony in this manner.  Because the Proposed Consent Decree is not narrowly drawn and is too broad to enforce, it will not be approved.

In sum, the Court encourages parties to settle their disputes amicably, and respects such efforts.  The Proposed Consent Decree, however, affects the rights and duties of

---

[4]   The Bellevue Defendants state this provision only seeks to limit their 'official' position.  (Filing No. 89 at 3.)  Phelps-Roper argues that the provision "reflects an agreement by the Bellevue defendants to have an official policy in the future of abiding by the constitution as it pertains to protected activity."  (Filing No. 91 at 5.)  However, the language of the Proposed Consent Decree is not so benign.  The provision in the decree relates directly to testimony and evidence that is permitted in the criminal actions.

Defendants who did not consent to its terms.  Further, some of the terms are so broad as to be difficult if not impossible to enforce.  The Court concludes, therefore, that the Objections to the Joint Submission of Consent Decree will be sustained and the Proposed Consent Decree will not be entered.

## 2.    Repealed Bellevue Ordinances

In Counts VI and VII of the Amended Complaint, Phelps-Roper seeks a declaratory judgment and injunctive relief barring enforcement of sections 28-111, 28-112, and 28-125 through 28-133 of the Bellevue Municipal Code.  Each of these sections has been repealed by Bellevue City Ordinance 3561, effective February 8, 2010.  Because there is no evidence that the City of Bellevue intends to reenact the repealed ordinances, Phelps-Roper's claims are moot and will be dismissed.  *See Epp v. Kerrey*, 964 F.2d 754, 755-56 (8th Cir. 1992).

## 3.    Motion to Dismiss, Abstain, or Stay with Protective Order

The Court will dismiss Phelps-Roper's claims that she may address in her pending criminal case, but will retain jurisdiction over her challenges to the NFPL. Generally, federal district courts have a "virtually unflagging obligation" to exercise jurisdiction over proper cases.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  However, courts may abstain from deciding certain issues to preserve "traditional principles of equity, comity, and federalism." *Alleghany v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990).  Federal court abstention is divided into several limited doctrines aimed at preserving these principles.  *See generally Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941) (abstention appropriate where a challenged state statute is susceptible of a

construction by the state court that would modify or avoid a federal constitutional question ("*Pullman* abstention")); *Colorado River Water Conservation*, 424 U.S. at 817-820 (1976) (abstention appropriate to avoid duplicative litigation ("*Colorado River* abstention")); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (abstention appropriate to avoid needless conflict in administration of state affairs ("*Burford* abstention")); *Younger v. Harris*, 401 U.S. 37 (1971) (abstention appropriate to avoid intrusion on state enforcement of state laws in state courts ("*Younger* abstention")).

The Defendants in this case argue the Court should dismiss and abstain because of the pending criminal charges against Phelps-Roper.  The Court concludes it should abstain, and dismiss Counts III through V and Count VIII, under the *Younger* doctrine, because these issues may be addressed through the defense of her criminal charges. However, the Court will not dismiss Phelps-Roper's challenge to the NFPL, because none of the Defendants has demonstrated that abstention is proper at this time.

**a.**     **Abstention Under the *Younger* Doctrine**

      **i.**     **Counts III through V**

Counts III through V must be dismissed because criminal actions are pending that relate directly to these allegations.  In *Younger*, the Supreme Court held that federal courts must dismiss suits for injunctive or declaratory relief directly related to pending criminal proceedings, except in the most exceptional circumstances.  *Younger*, 401 U.S. at 43.  In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), the Supreme Court set out a three-part test for deciding whether a district court should abstain in favor of a state proceeding.  Before abstaining, the district court must determine that:

(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges.  *Id.* at 432.

Here, criminal proceedings that raise important state interests are pending against Phelps-Roper in a Nebraska state court.  State interests are matters that traditionally look to state law for resolution or implicate separate state policies.  *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997).  Charges for disturbing the peace, contributing to the delinquency of a minor, and negligent child abuse are all matters typically resolved under state law.  Further, the proceedings raise important state interests because Phelps-Roper challenges the constitutionality of state statutes.  *See Postscript v. Peach*, 878 F.2d 1114, 1116 (8th Cir. 1989) ("vital state interests" implicated where plaintiff raised the issue of constitutionality of state statutes).  Accordingly, the first two parts of the *Middlesex* analysis are met.

The state criminal proceedings also afford Phelps-Roper an opportunity to present her constitutional claims.  Nebraska law allows criminal defendants to challenge the constitutionality of statutes under which they are charged, through a motion to quash or a demurrer.  *See State v. Liston*, 712 N.W.2d 264, 471 (Neb. 2006).  Phelps-Roper herself challenged the flag desecration statute through a motion to quash before the county court.[5] Phelps-Roper argues that she has no adequate remedy in state court because the "factual record in this case shows that adequate relief is not available in the state court system."

---

[5]  Phelps-Roper states "the only remedy in state court is to find the statute fully unconstitutional, and dismiss the criminal cases."  (Plaintiff's Brief, Filing No. 65 at 9.) This is precisely the type of relief Phelps-Roper now seeks in this Court.

(*Id*. at 10.)  The *Younger* doctrine does not require that the criminal defendant be able to challenge the statute factually, only that the defense be available procedurally.  Federal courts "may not engage any presumption 'that the state courts will not safeguard federal constitutional rights.'" *Neal v. Wilson*, 112 F.3d 351, 357 (8th Cir. 1997) (quoting *Middlesex*, 457 F.3d at 431.)  The pending state-court criminal proceedings clearly afford Phelps-Roper the opportunity to present her federal constitutional challenge.  Therefore, the requirements of *Younger* are met, and this Court should abstain.

### ii.    Substantive Due Process Claim

The Court must also abstain on Phelps-Roper's substantive due process claim because it is based on her arrest and prosecution.  Abstention on issues affecting the outcome of a constitutional challenge is appropriate where nonabstention would foreclose a state court's opportunity to address the direct statutory challenge.  *Trainor v. Hernandez*, 431 U.S. 434, 445 (1977).  In other words, district courts must abstain from constitutional challenges that are inseverable from claims that must be dismissed under *Younger* abstention.  *Act Now to Stop War and End Racism Coalition v. District of Columbia*, 589 F.3d 433, 436 (D.C. Cir. 2009).  In Count VIII, Phelps-Roper claims that Defendants violated her right to raise her children in accordance with her religious beliefs.  (Amended Compl. ¶ 142.)  These violations allegedly occurred when she was arrested, cited, and prosecuted for her children's involvement in the protest.  She also alleges that her rights were violated by Defendant Polikov's public statement of intent to prosecute her for her children's involvement.  These claims may be raised as defenses to her criminal charges.  A ruling on the merits of this claim in Phelps-Roper's favor would be grounds for dismissal

14

of her criminal charges and would negate a state-court ruling on her direct statutory challenges. Therefore, Count VIII is inseverable from the other claims and must be dismissed under the *Younger* abstention doctrine.

### iii.   Bad Faith Prosecution

Phelps-Roper has not shown her prosecution was initiated in bad faith. The bad faith exception to the *Younger* doctrine is narrow. If *Younger* abstention requirements are met, the district court should abstain unless the plaintiff shows "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex*, 457 F.3d at 435. For purposes of *Younger*, "bad faith" means a showing that the statute was enforced with no expectation of convictions, but only to discourage a plaintiff's exercise of protected rights. *Kugler v. Helfant*, 521 U.S. 117, 124 (1975); *Cameron v. Johnson*, 390 U.S. 611, 621 (1968). To make this showing, a plaintiff must demonstrate that he or she suffered or may suffer "irreparable injury" that is "great and immediate." *Postscript Enterprises, Inc. v. Peach*, 878 F.2d 1114, 1116 (8th Cir. 1989) (quoting *Younger*, 401 U.S. at 46.). Public statements directed at a plaintiff, without more, are insufficient to establish bad faith. *Id.* For example, in *Postscript*, the Eighth Circuit found that a plaintiff adult-bookstore owner claiming first amendment violations had not established bad faith prosecution even though the prosecuting attorney publicly declared he would "run [the plaintiff] out of business." *Id.*

In this case, Phelps-Roper has failed to establish malicious prosecution. Phelps-Roper argues that public statements made by Defendant Polikov show his decision to prosecute was in bad faith. However, Polikov's alleged statements, repeated in the

Amended Complaint and in Phelps-Roper's brief, appear to reflect his theory underlying the prosecution – that Phelps-Roper's actions were designed to induce a response or reaction from others, rather than to reflect her own expressive conduct.  (See Amended Complaint, Filing No. 17 ¶¶ 70-73; Filing No. 65 at 12).  These statements are simply reasons why Polikov believed the prosecutions would be successful and do not indicate that he exercised his prosecutorial discretion solely to harass Phelps-Roper.[6]  Polikov's statement that Phelps-Roper be put "out of sight and out of mind," appeared to reflect his personal desire that a certain law to be passed in Sarpy County, not his reasons for commencing the prosecution.  (Amended Complaint ¶ 70.)  The Court, therefore, concludes that Polikov's statements and actions did not trigger the bad faith exception to the *Younger* abstention doctrine; and Phelps-Roper has not shown other extraordinary circumstances meriting departure from the *Younger* doctrine.  Accordingly, the Court will abstain on these claims.

**b.      Challenges to the Nebraska Funeral Picketing Law**

The Court will not abstain from hearing Phelps-Roper's remaining causes of action, because they are independent of her pending criminal charges.  Phelps-Roper's remaining causes of action challenge the NFPL facially and as applied.  The Defendants fail to

---

[6] In a previous case involving Phelps-Roper's church, the Tenth Circuit found even a history of personal animosity fails to demonstrate that a prosecution was commenced in bad faith.  In *Phelps v. Hamilton*, 122 F.3d 885, 890-91 (10th Cir. 1997), the WBC plaintiffs claimed personal animosity against them, where the prosecutor and her husband frequently communicated hostility toward the WBC plaintiffs, the prosecutor made campaign statements that she would prosecute the plaintiffs, and the prosecutor had filed twenty cases against the WBC plaintiffs.  The Tenth Circuit found these actions did not constitute bad faith prosecution.

demonstrate that this Court should abstain from hearing her NFPL challenges under any of the abstention doctrines.

### i.   *Younger* Abstention

No charges against Phelps-Roper were brought for NFPL violations in the county court, nor does any evidence before this Court indicate state proceedings against Phelps-Roper under the NFPL are pending.  Nothing in the record at this time indicates that Phelps-Roper's NFPL challenges are inseverable from her challenges to the statutes that are the basis of her criminal charges.  *See Act Now*, 589 F.3d at 436. Therefore, abstention under the *Younger* doctrine does not apply to these claims.

### ii.   *Colorado River* Abstention

 For the same reasons the *Younger* doctrine is inapplicable, abstention or a stay of these proceedings are not appropriate under the *Colorado River* doctrine.  Under *Colorado River*, a district court "may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention."  *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009) (citing *Colorado River*, 424 U.S. at 817-18.) Because Phelps-Roper has not been charged under the NFPL, and no parallel state actions are pending, *Colorado River* abstention is inapplicable.

### iii.   *Burford* Abstention

Defendants also broadly suggest that each of the other abstention doctrines applies to this case.  However, the *Burford* abstention doctrine does not apply to Phelps-Roper's NFPL claims because the NFPL is not a "complex regulatory scheme supervised by state courts."  *Melahn v. Pennock Ins.*, Inc., 965 F.2d 1497, 1506 (8th Cir. 1992).  Further,

Phelps-Roper's NFPL claims do not demand specialized knowledge for an application of complicated state laws. *Casey v. FDIC*, 583 F.3d 586, 892 (8th Cir. 2009). Therefore, adjudication of Phelps-Roper's NFPL challenges do not needlessly interfere with state affairs.

### iv.   *Pullman* Abstention

Defendants also have failed to demonstrate that the Court should abstain under the *Pullman* doctrine. Federal courts may abstain under *Pullman* where a "challenged statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question.'" *Beavers v. Arkansas State Bd. of Dental Exam'rs*, 151 F.3d 838, 841 (8th Cir. 1998) (quoting *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 510-11 (1972)). The Court must examine several factors to determine whether abstention is appropriate.[7] *Pullman* abstention is disfavored in First Amendment cases where state statutes are facially challenged under the federal constitution. *Beavers*, 151 F.3d at 841. The Defendants have not argued directly that the Court should abstain under *Pullman,* other than to state that the Court would be justified in abstaining under each doctrine. (Filing No. 58 at 4.) Consequently, the arguments and evidence before the Court do not address the factors that must be considered, and the Court cannot conclude that abstention is appropriate under *Pullman.*

---

[7] These factors include "(1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations." *Beavers*, 151 F.3d at 841.

4.      **Absolute Judicial Immunity**

Defendants Hutton and the Nebraska Supreme Court (the "judicial defendants") will be dismissed from this action.  The Supreme Court has held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in [the] judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1981).  Under the circumstances of this case, however, the judicial defendants are not proper parties.  "[A] court should not enjoin judges from applying statutes when complete relief can be afforded by enjoining all other parties with the authority to seek relief under the statute." *In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17, 23 (1st Cir. 1982).  It is presumed that judges will abide by a declaration of a statute's unconstitutionality, made by a court of competent jurisdiction, without further compulsion.  *See Wolfe v. Strankman*, 392 F.3d 358, 366 (9th Cir. 2004).  Each of the other Defendants can seek to enforce the NFPL.  There is no basis for causing the judicial defendants to remain subject to Phelps-Roper's remaining claims, because complete relief is available through her suit against the other parties.  Therefore, the judicial defendants will be dismissed.

5.      **Motion to Dismiss Defendants Steven Curry and Anthony McPhillips**

Defendants Steven M. Curry and Anthony McPhillips ("Merrick County Defendants") move to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Merrick County Defendants filed their Answer to the Complaint on January 7, 2010 (Filing No. 8), and, technically, a motion to dismiss under Rule 12(b) cannot be filed after an answer has been submitted.  *See* Fed. R. Civ. P. 12(b).  Rule 12(h)(2), however, permits a defense of "failure to state a claim" to be raised as a motion for judgment on the pleadings under Rule 12(c).

Thus, the Court will treat the Merrick County Defendants' motion as a Rule 12(c) motion. *See Westcott v. City of Omaha*, 901 F.2s 1486, 1488 (8th Cir. 1990). This distinction is purely formal, and the Court reviews this Rule 12(c) motion under the same standard that governs Rule 12(b)(6) motions. *Id.*

The Merrick County Defendants argue that Phelps-Roper's claims against them should be dismissed because the Amended Complaint fails to allege any acts by the Merrick County Defendants other than to list them in the caption and describe their positions with Merrick County, Nebraska. This assertion is incorrect. Paragraph 43 of the Amended Complaint describes Phelps-Roper's allegations against Defendant McPhillips. Further, both Merrick County Defendants' statutorily defined duties require them to enforce state law. Neb. Rev. Stat. § 23-1201; § 23-1701.02 (Reissue 2007). The allegations in the Amended Complaint sufficiently encompass the Merrick County Defendants,[8] and their motion will be denied.

## CONCLUSION

The Court will not enter the Proposed Consent Decree because it affects the rights and duties of nonconsenting parties, and it is not narrowly tailored. Counts VI and VII will be dismissed as moot. Counts III through V, and VII will be dismissed under the *Younger*

---

[8] The Amended Complaint does not identify any specific acts or omissions of Defendant Curry. However, the Sixth Circuit has held that prosecutors are proper parties in suits for injunctions against the unconstitutional enforcement of state statutes where their statutory duties require enforcement of state law. *Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 211 (6th Cir. 1997) ("If the District Court found the [challenged statute] unconstitutional, as it did, the prosecutor would not have been bound by the injunction if he were not a party. Therefore, the District Court did not err in declining to dismiss the prosecutor."). The Court cannot assume Defendant Curry is an improper party based solely on the argument set forth by the Merrick County Defendants.

abstention doctrine, because criminal proceedings are ongoing wherein Phelps-Roper may raise her constitutional challenges.  The Court will also dismiss Judge Hutton and the Nebraska Supreme Court as Defendants.  The Merrick County Defendants' Motion for Judgment on the Pleadings will be denied.  Accordingly,

IT IS ORDERED:

1.  The Joint Stipulation of Consent Decree (Filing No. 79) entered into by Plaintiff Shirley L. Phelps-Roper ("Phelps-Roper") and Defendants City of Bellevue, Nebraska; John W. Stacey; Gary Mixan, Kay Dammast, and Gary Troutman (collectively the "Bellevue Defendants") is rejected;

2.  Defendants' Objections to the Proposed Consent Decree and Judgment (Filing Nos. 84, 85, 86, 87, 88) are sustained;

3.  Counts VI and VII of the Amended Complaint are dismissed as moot, with prejudice;

4.  Defendants' Motions to Dismiss and Abstain or to Stay Proceedings and for a Protective Order (Filing Nos. 42, 47, 51, 52, 56, 72) are granted in part and denied in part as follows:

   a.  Counts III through V, and VIII, of the Amended Complaint are dismissed, without prejudice;

   b.  Defendants Timothy Hutton and the Nebraska Supreme Court are dismissed from this action;

   c.  Otherwise, the Motions are denied;

5.  The Motion to Dismiss filed by Defendants Steven M. Curry and Anthony McPhillips (Filing No. 68) is denied; and

21

6.      The remaining Defendants will respond to Counts I and II of the Amended

Complaint on or before May 3, 2010.

DATED this 19th day of April, 2010.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge